# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 67377-7-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| THOMAS M. GAUTHIER, | ) ) |  |
| Appellant. | ) ) ) | FILED: April 1, 2013 |

APPELWICK, J. — Gauthier exercised his constitutional right to refuse to consent to a warrantless search and seizure of his DNA. The State introduced evidence of his refusal and argued it was substantive evidence of his guilt. We reverse.

## FACTS

Thomas Gauthier appeals from his conviction of second degree rape. He was charged in King County for the 2001 rape of T.A. Gauthier and T.A.'s version of events differed substantially at trial.

Gauthier testified that on the night of April 21-22, 2001, he was high and walking along Des Moines Memorial Drive. He wanted to find someone to sell him crack, so he caught up with a woman walking ahead of him. The woman did not have any crack, but she accepted Gauthier's offer of $50 in exchange for oral sex. The two stepped over the guardrail into a grassy area, where Gauthier laid down his coat. The woman knelt down and performed oral sex. Gauthier testified that after he ejaculated, the woman

turned her head and spit. She then demanded the money, but Gauthier recognized her to be someone who previously cheated him in a drug deal. He refused to pay her and the woman got angry and yelled at him. Gauthier denied using force at any point during the encounter.

T.A. testified that she was walking home on Des Moines Memorial Drive late on the night of April 21-22, 2001. She said that she was suddenly tackled from behind and pushed down over a guardrail into the grass. She told her assailant that she was on her period and even removed her tampon to prove it. She testified that the man put his hands around her neck and forced her to perform oral sex. After he finished, the man ran away, and T.A. wiped her mouth on her coat and went home.

T.A. did not call the police from her apartment, because she was behind on her phone bill and could only receive incoming calls. She was so angry that she grabbed a kitchen knife and went looking for the man. She could not find him, so she returned home. Her sister and sister's boyfriend, Donald Brown, called soon after, and T.A. told Brown everything. Brown came over to her apartment and found her very upset. The two drove around looking for the man, but still could not find him. T.A. did not ask her sister or Brown to call the police.

The next morning T.A. called the police after she realized she could call 911 from her phone. The responding officer found T.A. upset and crying, with bruises on her left arm and right thigh. T.A. took the officer to the grassy area where she said the rape occurred. The officer found a tampon at the scene and an area of flattened grass. He took T.A.'s statement and put her clothing into evidence.

2

Detectives returned to the scene several different nights trying to locate witnesses or suspects. They stopped and questioned Gauthier on June 28th within a mile and a half from the scene. The officers wrote down Gauthier's contact information and let him continue on his way.

The crime lab found DNA (deoxyribonucleic acid) on T.A.'s jacket sleeve—one female partial profile matching T.A. and one male partial profile. At the time, no sample in the police database matched the male profile. Police called T.A. at least once or twice to look at photographs to try to identify a suspect. At one point, she saw a photo of L.F.[1] and was 80 percent sure he was her attacker. L.F. voluntarily provided a DNA sample, but his DNA did not match the sample from T.A.'s jacket.

Seven years later in 2008, police reopened the case when Gauthier's DNA was matched with the sample from T.A.'s jacket. By that time, Gauthier was living in Arizona. In January 2009, Detective Chris Knudsen called Gauthier and told him that his DNA was found on the jacket of a reported rape victim. Knudsen asked Gauthier if he could explain why his DNA would be there. Though Gauthier could not explain, he told Knudsen that he had frequented prostitutes in that area. Gauthier repeatedly denied raping anyone.

Before obtaining a warrant or court order, Knudsen requested a cheek swab sample of Gauthier's DNA. Knudsen testified at trial that Gauthier initially agreed to provide a DNA sample, but Gauthier disputed that fact. Knudsen warned Gauthier about the gravity of the situation. Concerned, Gauthier contacted a lawyer, who

---

[1] We use L.F.'s initials, because he was exonerated in this case. He is not a minor.

3

advised Gauthier to refuse consent to the warrantless DNA sample. Gauthier then called Knudsen and left a voicemail that he was refusing to give the DNA sample on the advice of counsel. Knudsen eventually obtained a DNA cheek swab sample from Gauthier after getting a court order.

Before trial, defense counsel moved to exclude evidence of Gauthier's refusal, arguing that it would be an impermissible comment on his Fifth Amendment right to silence and right to counsel. The prosecutor responded:

> I don't intend to offer evidence in my case in chief that he refused to provide a DNA sample when initially asked down in Arizona, but should he elect to testify, I certainly think it's fair grounds for me to cross-examine him on that fact. I mean, if his theory is true that this was just, you know, an act of prostitution gone bad he should be giving up DNA samples right and left. He didn't do anything wrong, and it's completely counterintuitive to the position in the defense theory.

The prosecutor soon after reiterated that her wish to cross-examine Gauthier about his refusal was "not a comment on a constitutional right. It's a comment on the fact that he's taking an action, which is inconsistent with someone who is innocent."

The court concluded that if Gauthier testified, the prosecutor could cross-examine him about his refusal to provide DNA so long as the question did not reference his right to an attorney. The court suggested the phrasing: "'Isn't it true that you refused to provide a DNA sample when asked to do so in Arizona?'" The court reasoned that DNA is not testimonial, so it would not implicate his Fifth Amendment rights.

On cross-examination, the prosecutor asked Gauthier about his refusal to provide a DNA sample. Defense counsel made no objection. Defense counsel brought up the refusal in closing, arguing that it was reasonable for Gauthier to refuse to give a DNA sample upon his lawyer's advice. Defense counsel told the jury "[Gauthier] told

4

[Knudsen] everything because he had nothing to hide. He had nothing to hide." In rebuttal, the prosecutor contrasted Gauthier's refusal with L.F. voluntarily providing a DNA sample. She said:

> What did [L.F.] do? Sign me up. Here are my swabs. I didn't do this. And low and behold [L.F.] was excluded. Excluded. Exonerated by DNA from that jacket. [L.F.'s] actions of sign me up, here's my DNA, I didn't do this are consistent with someone who is innocent. This guy's actions are consistent with someone who is not. You don't want to provide your DNA sample because, you know, it's going to be there. Because you're guilty.

Defense counsel did not object to this argument. The jury found Gauthier guilty and the court imposed a standard range sentence. Gauthier timely appealed.

## DISCUSSION

Gauthier argues that the State violated his due process rights, as well as his rights under the Fourth Amendment and article I, section 7 of the Washington Constitution, by presenting evidence of his refusal to provide a DNA sample as substantive evidence of guilt. Because Gauthier failed to raise this objection to the trial court, he has waived the issue absent manifest constitutional error. RAP 2.5(a)(3). An error raised for the first time on appeal must be manifest and truly of constitutional dimension. State v. Kirkman, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). The defendant must show how the alleged error actually affected his rights at trial. Id. at 926-27. If we determine that the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. Id. at 927.

I.  Manifest Constitutional Error

A blood test or cheek swab to procure DNA evidence constitutes a search and seizure under the Fourth Amendment and article I, section 7 of the Washington

5

Constitution. State v. Garcia-Salgado, 170 Wn.2d 176, 184, 240 P.3d 153 (2010); State v. Curran, 116 Wn.2d 174, 184, 804 P.2d 558 (1991), overruled on other grounds by State v. Berlin, 133 Wn.2d 541, 947 P.2d 700 (1997). Because taking a DNA sample constitutes a search, a warrant or court order is first required. Garcia-Salgado, 170 Wn.2d at 184, 186. As a result, individuals have a constitutional right to refuse consent to warrantless sampling of their DNA. See Schneckloth v. Bustamonte, 412 U.S. 218, 228, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); State v. Morse, 156 Wn.2d 1, 13, 123 P.3d 832 (2005).

The Ninth Circuit's Prescott opinion supports Gauthier's argument. United States v. Prescott, 581 F.2d 1343 (9th Cir. 1978). There, police thought a suspect might be hiding in Saundra Prescott's apartment. Id. at 1347. She refused to let the police in without a warrant. Id. The police eventually kicked the door in, found the suspect hiding inside, and charged Prescott as an accessory after the fact. Id. At trial, the prosecution introduced Prescott's refusal to allow the warrantless search as evidence of the charged offense. Id. at 1350.

The Ninth Circuit concluded that, because the Fourth Amendment gives individuals a constitutional right to refuse consent to a warrantless search it is privileged conduct that cannot be considered as evidence of criminal wrongdoing. Id. at 1351. This is so, the court explained, regardless of the individual's motivations. Id. at 1351 & n.2. The right to refuse consent exists for both the innocent and the guilty. Id. at 1352. If the government could use such a refusal against an individual, it would place an unfair and impermissible burden upon the assertion of a constitutional right. Id. at 1351. As a

6

result, future consents would not be "'freely and voluntarily given.'" Id. (quoting Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968)). Though the court reversed Prescott's conviction on other grounds, it stated that if the case proceeded to retrial, the trial court should take care to exclude all evidence of Prescott's refusal to consent to the search. Id. at 1353.

The Prescott court's conclusion was based in part on its analogy to the Fifth Amendment right to silence. Id. at 1352. Both the United States and Washington Supreme Courts have held that defendants' exercise of their Fifth Amendment right to silence may not be introduced against them at trial as substantive evidence of guilt. See, e.g., Griffin v. California, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); State v. Burke, 163 Wn.2d 204, 221-22, 181 P.3d 1 (2008). To hold otherwise would allow courts to penalize individuals for lawfully exercising a constitutional privilege. Griffin, 380 U.S. at 614; Burke, 163 Wn.2d at 212, 221.

One reason a defendant's silence may not be introduced at trial as evidence of guilt is because silence is ambiguous. Prescott, 581 F.2d at 1352 (citing United States v. Hale, 422 U.S. 171, 176-77, 95 S. Ct. 2133, 45 L. Ed. 2d 99 (1975)). The Washington Supreme Court in Burke noted similar skepticism about the probative value of silence. 163 Wn.2d at 218-19. If a defendant's silence was admissible, the prosecutor might argue that if the defendant had nothing to hide, he would not have kept silent. Prescott, 581 F.2d at 1352. But, even an innocent person may have many reasons for not speaking, like mistrusting antagonistic law enforcement, being under no obligation to speak, or simply knowing that anything you say can be used against you.

Burke, 163 Wn.2d at 218-19. In most cases, it is impossible to conclude that refusal to speak is more consistent with guilt than with innocence. Id. at 219. As a result, such evidence can be readily misinterpreted by the jury, which renders any "curative or protective instruction of dubious value." Prescott, 581 F.2d at 1352.

The same can be said about exercising the constitutional right to privacy. See id. If evidence of refusal to consent to a search was admissible, the prosecutor might argue that if the defendant were not trying to hide something, he would let the officer conduct the search. Id. But, individuals might not want police to enter their home, whether or not there is evidence of wrongdoing. Similarly, individuals might not want their DNA to be forever catalogued in a police database. Or, they might not want police to have access to all the personal information DNA contains. Exercising the right to refuse consent to a warrantless search may have nothing to do with hiding guilt. The jury should not be allowed to infer guilt in such ambiguous circumstances, particularly involving the exercise of a constitutional right.

In addition to the Ninth Circuit, at least four other federal circuit courts and 15 states have reached the same conclusion.[2] The Fifth Circuit noted that "circuit courts

---

[2] See, e.g., United States v. Runyan, 290 F.3d 223, 249 (5th Cir. 2002); United States v. Moreno, 233 F.3d 937, 940-41 (7th Cir. 2000); United States v. Dozal, 173 F.3d 787, 793-94 (10th Cir. 1999); United States v. Thame, 846 F.2d 200, 206-07 (3d Cir. 1988); Elson v. State, 659 P.2d 1195, 1197-99 (Alaska 1983); State v. Stevens, 228 Ariz. Ct. App. 411, 416-17, 267 P.3d 1203 (2012); People v. Wood, 103 Cal. App. 4th 803, 808-09, 127 Cal. Rptr. 2d 132 (2002); Gomez v. State, 572 So. 2d 952, 953 (Fla. Dist. Ct. App. 1990); Longshore v. State, 399 Md. 486, 537-38, 924 A.2d 1129 (2007); People v. Stephens, 133 Mich. App. 294, 298, 349 N.W.2d 162 (1984); Ramet v. State, 125 Nev. 195, 198, 209 P.3d 268 (2009); Garcia v. State, 103 N.M. 713, 714, 712 P.2d 1375 (1986); State v. Jennings, 333 N.C. 579, 604-05, 430 S.E.2d 188 (1993); State v. Wiles, 59 Ohio St. 3d 71, 88, 571 N.E.2d 97 (1991); Commonwealth v. Tillery, 417 Pa. Super. Ct. 26, 34, 611 A.2d 1245 (1992); Simmons v. State, 308 S.C. 481, 484-85, 419 S.E.2d 225 (1992); State v. Bowker, 2008 S.D. 61, 754 N.W.2d 56, 70; Reeves v.

that have directly addressed this question have unanimously held that a defendant's refusal to consent to a warrantless search may not be presented as evidence of guilt." United States v. Runyan, 290 F.3d 223, 249 (5th Cir. 2002).

The Washington Supreme Court has also indicated, though not explicitly held, that using refusal to consent to a search as evidence of guilt is unconstitutional. State v. Jones, 168 Wn.2d 713, 725, 230 P.3d 576 (2010). In Jones, a police officer testified that the defendant refused to take a DNA test and only provided a cheek swab after court order. Id. at 718. In closing, the State reiterated and emphasized that refusal. Id. at 718, 725. Jones argued on appeal that these comments constituted prejudicial misconduct. Id. at 725. The Supreme Court reversed Jones's conviction on other grounds. Id. at 720, 724-25. But, at the end of the opinion, the court addressed Jones's misconduct argument. Id. at 725. The court explained that the comments were improper because Jones had "a Fourth Amendment right to refuse to provide a DNA swab sample." Id. The court continued, emphatically, "We go so far as to say that the court's imprimatur is now upon the State and that such argument is improper and should not be repeated on remand." Id. This language indicates that the Washington Supreme Court considers such comments to be a constitutional violation.

Nevertheless, the State attempts to argue that the Fourth and Fifth Amendment rights function differently, so the right to silence cases are inapplicable here. The State explains that the Fifth Amendment privilege against self-incrimination is violated at trial

---

Texas, 969 S.W.2d 471, 493-95 (1998); State v. Banks, 2010 WI App. 107, 328 Wis.2d 766, 782, 790 N.W.2d 526. But see Smith v. State, 2010 WI App. 107, 199 P.3d 1052, 1061 (2009) (holding that evidence of refusal to provide DNA sample was not prohibited by Fifth Amendment).

when a defendant is compelled to be a witness against himself. On the other hand, the State claims, Gauthier's Fourth Amendment rights were never violated. No warrantless search was conducted and Gauthier's privacy never invaded.

But, the State misses the point. The constitutional violation was that Gauthier's lawful exercise of a constitutional right was introduced against him as substantive evidence of his guilt. Whether defendants invoke their Fifth Amendment rights or their Fourth Amendment rights, exercising a constitutional right is not admissible as evidence of guilt. See Griffin, 380 U.S. at 614; Burke, 163 Wn.2d at 212. Moreover, the Washington Supreme Court has shown no tendency to distinguish between the Fourth and Fifth Amendments in such cases. See Jones, 168 Wn.2d at 725. Indeed, the Burke court, analyzing the Fifth Amendment, stated that "[c]ourts are appropriately reluctant to penalize anyone for the exercise of *any* constitutional right." 163 Wn.2d at 221 (emphasis added).

We hold that the prosecutor's use of Gauthier's invocation of his constitutional right to refuse consent to a warrantless search as substantive evidence of his guilt was a manifest constitutional error properly raised for the first time on appeal. The error deprived Gauthier of his right to invoke with impunity the protection of the Fourth Amendment and article I, section 7. To hold otherwise would improperly penalize defendants for the lawful exercise of a constitutional right.

II.   Use of Refusal for Impeachment Purposes

The State argues, in the alternative, that evidence of Gauthier's refusal to consent was properly introduced for impeachment purposes. Impeachment evidence

may be offered solely to show the witness is not truthful, usually in the form of prior inconsistent statements. Burke, 163 Wn.2d at 219. But, such evidence may not be used to argue that the witness is guilty. Id. at 217. The Burke court acknowledged that when a defendant testifies at trial, his prearrest silence may be used for impeachment. Id. Federal circuit courts have held the same for refusal to consent to a search under certain circumstances. For instance, in United States v. Dozal, the defendant's refusal to consent to a search was admissible to impeach his testimony that he did not have dominion or control over the premises. 173 F.3d 787, 794 (10th Cir. 1999). In Leavitt v. Arave, the defendant's testimony that he fully cooperated with police could be impeached by evidence of his refusal to consent to a search. 383 F.3d 809, 827 (9th Cir. 2004). In United States v. McNatt, the defendant's refusal to consent to a warrantless search of his truck was admissible to impeach his testimony that police planted drugs there at the time of his arrest.[3] 931 F.2d 251, 258 (4th Cir. 1991).

However, here, use of the refusal evidence for impeachment purposes is not supported by the record. The prosecutor told the court before trial that she wished to introduce Gauthier's refusal, because it was inconsistent with the actions of someone who is innocent. She believed that if Gauthier's prostitution story were true and he had

---

[3] The State also cites State v. Martin, in which the prosecutor elicited testimony from the defendant implying that he tailored his testimony to evidence presented by other witnesses. 171 Wn.2d 521, 536, 252 P.3d 872 (2011). The Washington Supreme Court held that this did not impermissibly burden the defendant's article I, section 7 right to testify on his own behalf, because it went to his credibility. Id.; see also Portuondo v. Agard, 529 U.S. 61, 69, 120 S. Ct. 1119, 146 L. Ed. 2d 47 (2000) (holding that similar cross-examination did not violate the defendant's rights under the Sixth Amendment). How this case opens the door to allow comment on the defendant's exercise of the constitutional right to refuse consent to a warrantless search is unclear, especially considering the vitality of Burke and Jones. We do not find Martin useful, let alone controlling here.

nothing to hide, then "he should be giving up DNA samples right and left."[4] This is the same argument the Prescott court rejected—that if the defendant had nothing to hide, he would consent to the search. 581 F.2d at 1352. And, the State makes this same strained argument on appeal: "If Gauthier had in truth had consensual sexual intercourse with T.A., it would have made no sense to withhold his DNA—identification would be irrelevant." But, if identification were irrelevant, then Gauthier's prior refusal to take the identifying test was also irrelevant, because Gauthier admitted to intercourse with T.A.

Moreover, Gauthier did not make any false claims on direct examination about his refusal to provide DNA evidence, which would have allowed the prosecutor to impeach his testimony on that basis. Rather, Gauthier testified that he tried to get in touch with the King County Sheriff's Office when he heard they were looking for him. He explained that he spoke with Detective Knudsen on the phone. He testified that Knudsen told him about his DNA on the sleeve of a reported rape victim and explained the gravity of the situation. No other testimony was elicited on direct about Gauthier's conversation with Knudsen. He never said that he fully cooperated with Knudsen or that he agreed to provide his DNA immediately upon request.

But, on cross-examination, the prosecutor asked Gauthier numerous questions about his phone conversation with Detective Knudsen. Gauthier admitted that Knudsen let him speak and take his time to answer questions. Then the prosecution asked, "And

---

[4] The court apparently allowed her to bring out this evidence in cross-examination, because it thought Gauthier did not have a constitutional right to refuse consent.

he also asked if you would provide a DNA sample, right?" Gauthier responded, "Yes." Then the prosecution followed up, "And isn't it true that you told him no, I'm not going to provide. Initially you said you would and then . . . ." Gauthier denied that he initially agreed to provide a DNA sample. The prosecutor then proceeded for two more pages in the record to ask about Gauthier's refusal to provide his DNA upon the advice of counsel. And, the prosecutor reiterated Gauthier's refusal on cross the following day, "Yesterday you told us that you recalled the conversation with Detective Knudsen as in part you saying no way, no how am I going to provide a DNA sample."

Evidence of Gauthier's refusal did not impeach any of his testimony invited on direct examination. Rather, the prosecutor elicited the testimony for the primary purpose of encouraging the jury to infer guilt based on Gauthier's refusal to provide a DNA sample. She had made this intention explicit during pretrial motions. If such evidence is admissible for impeachment every time the defendant's version of events is different from the State's—as the State implied at oral argument—it would eviscerate any protection from warrantless searches the Fourth Amendment and article I, section 7 provide. This was not impeachment and therefore cannot save the State from the constitutional violation.

III.     Harmless Error

The question remains whether the error was harmless. We find constitutional error harmless only if convinced beyond a reasonable doubt that any reasonable jury would reach the same result absent the error, and where the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. Burke, 163 Wn.2d at 222.

Where the error is not harmless, the defendant must have a new trial. State v. Easter, 130 Wn.2d 228, 242, 922 P.2d 1285 (1996).

In Burke, also a rape case, the entire trial boiled down to whether the jury believed or disbelieved Burke's story. 163 Wn.2d at 222. There, repeated references to Burke's silence as evidence that he had something to hide undermined his credibility as a witness. Id. at 222-23. The same is true here. Gauthier's trial boiled down to whether the jury believed his story about prostitution gone bad or T.A.'s story that he forced her to perform a sex act. DNA evidence on T.A.'s jacket sleeve supported both her version and Gauthier's version of events. The tampon found at the scene corroborated T.A.'s version of events, but the area of flattened grass supported both stories. And, T.A.'s other testimony could support either version of the facts. For instance, she claimed she was afraid after the alleged rape, but then grabbed a knife and went back out late at night to hunt down and kill her attacker. This is consistent with anger for being stiffed for payment for the sexual act or with being raped. She also did not ask her sister or Brown to call the police the night of the incident, though she had ample opportunity to do so.

The prosecutor repeatedly undermined Gauthier's credibility by referencing his refusal to consent to the DNA test. She explicitly told the jury that Gauthier's refusal to consent was consistent with someone who is guilty. In light of these inflammatory statements, we cannot say beyond a reasonable doubt that the jury would reach the same result absent the error. We hold that the error was not harmless.

In the alternative, Gauthier asserts ineffective assistance of counsel and prosecutorial misconduct. He also filed a statement of additional grounds. Because we find the constitutional issue dispositive, we need not reach Gauthier's alternative arguments.

We reverse.

WE CONCUR: