IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No.  54079-7-II |
| RICHARD GERALD NEIGHBARGER, | |
| Petitioner. | UNPUBLISHED OPINION |

SUTTON, J. — Richard Neighbarger was convicted of multiple sex offenses against his children, JN and ZN.  The convictions were affirmed on direct appeal.  Neighbarger now brings this personal restraint petition (PRP), claiming that he received ineffective assistance of trial and appellate counsel, the prosecutor committed misconduct during closing argument, and cumulative error denied him a fair trial.  Neighbarger also argues that newly discovered evidence warrants a new trial.

We disagree.  Neighbarger did not receive ineffective assistance of trial or appellate counsel, the prosecutor did not commit misconduct, and the cumulative error doctrine does not apply.  Further, the newly discovered evidence presented by Neighbarger does not warrant a new trial.  Accordingly, we deny Neighbarger's PRP.

FACTS

I. BACKGROUND

Neighbarger and Sarah Neighbarger had two children, ZN and JN.  *State v. Neighbarger*, No. 50033-7-II, slip op. at 2 (Wash. Ct. App. July 31, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2050033-7-II%20Unpublished%20Opinion.pdf.   In

2015, ZN disclosed that Neighbarger sexually abused him as a child. *Neighbarger*, slip op. at 2. When law enforcement interviewed ZN, he disclosed the sexual abuse against both himself and JN. *Neighbarger*, slip op. at 2. ZN and JN also disclosed that Neighbarger attempted sexual contact with JN when JN was an adult. *Neighbarger*, slip op. at 2.

## II. TRIAL AND POST-TRIAL

### A. KERI ARNOLD

Pre-trial, the State gave notice of its intent to present testimony from Keri Arnold, a forensic child interviewer, regarding why victims of child sexual abuse often delay disclosing their abuse. Defense counsel objected. The prosecutor argued that Arnold's testimony would explain why ZN and JN delayed their disclosure. The prosecutor assured the trial court that Arnold would *not* be commenting on ZN and JN particularly, but would only testify generally regarding her expert knowledge. The court agreed to permit the testimony:

> I think the case law still supports limited testimony regarding at least someone with Ms. Arnold's experience as to the types of situations where she may observe and see delayed disclosure occurring, and the fact that it's not uncommon in many of the children that she interviews. The report doesn't occur immediately after the alleged abuse. I think I am inclined to allow it, but somewhat limited, really focusing on her role as a forensics examiner or a child interviewer, and her experience with a number of cases that she's dealt with where there has been some delayed disclosure.
>
> . . . .
>
> Obviously with the understanding that she is not to comment on the credibility of these two individuals and the reasons why their disclosure may have occurred late. She is to comment generally, but not specifically.

1 Verbatim Report of Proceedings (VRP) at 12-13.

Arnold adhered to the court's ruling during her trial testimony. Arnold testified regarding her experience as a forensic interviewer and testified generally as to why victims often delay

disclosure. She testified that delayed disclosure is a "very common" occurrence, occurring in "over 95 percent of the child abuse interviews that I do." 5 VRP at 315. Frequently, a child delays disclosure for weeks or even months or years. Arnold testified that the reasons for these delayed disclosures are often fear-based. In cases involving a family member who abused the child, the child is often afraid of repercussions towards the perpetrator of the abuse. Arnold testified that certain events often trigger disclosures, such as activities at school. Finally, Arnold testified that male victims tend to be less likely to disclose their abuse.

B. SARAH'S TESTIMONY

During Sarah's testimony, the prosecutor elicited testimony from her that she refused the police officers' request for her consent to search ZN's cell phone without a search warrant. The prosecutor also asked Sarah about an officer's report that she refused consent because she did not want the police to find incriminating evidence against her husband. The police officers wanted access to ZN's cell phone because it contained text message conversations between ZN and JN about Neighbarger's abuse. Defense counsel objected numerous times based on relevance, but his objections were overruled.

C. INVESTIGATING OFFICERS' TESTIMONY

Detective Shelby Wilcox testified that she, Captain Tamera Pihl, and child protective services (CPS) went to the Neighbarger residence to perform a CPS check and inform ZN of Neighbarger's arrest. Wilcox had an opportunity to speak with ZN privately before his mother arrived home. According to Wilcox, "He had a sense of relief in my opinion. He was kind of afraid what the future was going to hold." 5 VRP at 284. Trial counsel objected to this testimony as to relevance; the court sustained the objection as to the second sentence.

3

Captain Pihl assisted Detective Wilcox in the investigation. She also testified regarding her observations when she and Wilcox told Sarah of the accusations against her husband. Sarah and ZN were both present when Wilcox and Pihl told Sarah of the accusations. The State elicited the following testimony from Pihl:

> [STATE:] During the contact that you had with both [ZN] and his mother, do you recall making any observations about their interactions together?
>
> [CAPTAIN PIHL:] Yes.
>
> [STATE:] What were those observations?
>
> [DEFENSE COUNSEL:] I'd just object as to relevance, Your Honor.
>
> THE COURT: Overruled.
>
> [CAPTAIN PIHL:] There was not a comfort. There was not a -- it didn't appear that there was any-- it was very somber, and so she sat there and listened, but there was no comforting or did not appear to be reaching out to [ZN] in a way that might --

5 VRP at 346-47.

D.  VICTIMS' TESTIMONY

Both ZN and JN testified regarding abuse they had endured from Neighbarger. In their testimony, Neighbarger and Sarah both denied that Neighbarger had abused his sons.

E.  CLOSING ARGUMENT

During closing argument, the prosecutor argued:

You also look at the expert witness when you decide credibility. I submit to you that you have an expert witness instruction. Its number four.[1] . . . She went and spoke to you about memory. So before we get into that, a witness who had special training, education, and experience may be allowed to express an opinion in addition to giving testimony as to facts, and that's what she did. She came in and expressed an opinion. She did that based on her training and her experience and the type of evidence and her knowledge in the literature that she's gone through. And you consider all of that in addition to the other things that we previously spoke about for the credibility of a witness.

Let's talk about Ms. Arnold. She's worked for over thirteen years; and yes, she has worked for the prosecutor's office, which only makes sense because the prosecutor's office is the one that's involved in having kids interviewed about crimes and sexual offenses. So, yes, she does work for the prosecutor's office, and she's done over 2,000 interviews of children.

8 VRP at 661-62. Defense counsel did not object to this argument.

F. CONVICTION AND SENTENCING

The jury returned guilty verdicts on all 13 counts and found aggravating factors on some. The State requested an exceptional sentence of 720 months (high end standard range plus 402 months). Neighbarger filed a polygraph test that supported he was not being deceptive when he asserted he never sexually abused his sons. Defense counsel requested a low end standard range of 198 months. The trial court imposed an exceptional sentence of 480 months to life.

---

[1] Jury instruction number four states,

A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts.

You are not, however, required to accept his or her opinion. To determine the credibility and weight to be given to this type of evidence, you may consider, among other things, the education, training, experience, knowledge, and ability of the witness. You may also consider the reasons given for the opinion and the sources of his or her information, as well as considering the factors already given to you for evaluating the testimony of any other witness.

PRP, App. F.

5

III. DIRECT APPEAL

Neighbarger appealed his convictions to this court. We affirmed his convictions and rejected his claims. Our Supreme Court denied Neighbarger's petition for review, and we issued our mandate on December 6, 2018.

IV. PERSONAL RESTRAINT PETITION

Neighbarger filed this PRP, arguing numerous instances of ineffective assistance of trial and appellate counsel, as well as prosecutorial misconduct, cumulative error, and newly discovered evidence. As evidence, Neighbarger includes four supporting declarations and supporting attachments.[2]

ANALYSIS

I. LEGAL PRINCIPLES FOR PRPs

We will grant appropriate relief when petitioners establish that they are under restraint that is unlawful for one of certain specified reasons. RAP 16.4(a)-(c). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016). The petitioner must make this showing by a preponderance of the evidence. *Dove*, 196 Wn. App. at 154.

However, "[a] PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited." *Dove*, 196 Wn. App. at 154. "'Relief by way of a collateral challenge to a

---

[2] The declarations are from (1) Wayne Fricke, Neighbarger's trial and direct appeal counsel, (2) Suzanne Lee Elliott, an appellate and post-conviction attorney, (3) Heidi Cho, JN's ex-wife, and (4) James Lobsenz, Neighbarger's counsel in this PRP.

conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment.'" *Dove*, 196 Wn. App. at 153 (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). "For 'matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief.'" *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013) (quoting *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992)). If the evidence is based on knowledge in the possession of others, the petitioner must present their affidavits, with admissible statements, or other corroborative evidence. *In re Pers. Restraint of Monschke*, 160 Wn. App. 479, 488, 251 P.3d 884 (2010). Conclusory allegations are insufficient. *Wolf*, 196 Wn. App. at 503. In addition, the factual allegations must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 1.

## II. INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

A. STANDARD OF REVIEW

In the context of a PRP asserting ineffective assistance of appellate counsel, a petitioner must demonstrate that the challenged issue not raised in his direct appeal had merit and that he was actually prejudiced by his appellate counsel's failure to raise it. *In re Pers. Restraint of Dalluge*, 152 Wn.2d 772, 787-78, 100 P.3d 279 (2004). "The United States Supreme Court has recognized that a criminal defendant has a right to have effective assistance of counsel on his first appeal of right." *Dalluge*, 152 Wn.2d at 787. "Failure to raise all possible nonfrivolous issues on appeal is not ineffective assistance, and the exercise of independent judgment in deciding what

issues may lead to success is the heart of the appellate attorney's role." *Dalluge*, 152 Wn.2d at 787. "[G]enerally, the remedy for ineffective assistance of appellate counsel is reinstatement of the appeal and remand." *Dalluge*, 152 Wn.2d at 788.

## B. SARAH'S TESTIMONY REGARDING REFUSAL TO CONSENT TO SEARCH[3]

Neighbarger argues that he received ineffective assistance of appellate counsel related to Sarah's refusal to consent to a warrantless search of ZN's cell phone. He argues that Sarah's testimony was an improper inference that she believed Neighbarger was guilty. We hold that Neighbarger did not receive ineffective assistance of appellate counsel.

Neighbarger argues that under *State v. Gauthier*, the State cannot present Sarah's refusal to consent to a warrantless search because the refusal to consent is substantive evidence of guilt. 174 Wn. App. 257, 259, 263, 298 P.3d 126 (2013). There, the defendant refused to provide his DNA sample without a search warrant. *Gauthier*, 174 Wn. App. at 261. The prosecutor questioned the defendant regarding his refusal of consent to a warrantless search and seizure of his DNA and then argued that was substantive evidence of his guilt. *Gauthier*, 174 Wn. App. at 262. The defendant was suspected of rape, and the DNA sample was going to be compared to DNA found on the victim. *Gauthier*, 174 Wn. App. at 261. On appeal, the defendant challenged the State's introduction of his refusal to provide the DNA sample. *Gauthier*, 174 Wn. App. at 263. This court agreed that the introduction of the evidence was improper and reversed his convictions. *Gauthier*, 174 Wn. App. at 267. We held that "[t]he constitutional violation was that Gauthier's lawful

---

[3] Neighbarger relies on multiple cases about a defendant's constitutional right not to testify. However, those cases are inapplicable here because he is not seeking to assert Sarah's constitutional rights.

exercise of a constitutional right was introduced against him as substantive evidence of his guilt." *Gauthier*, 174 Wn. App. at 267.

This case is distinguishable from *Gauthier*. *Gauthier* involves the *defendant's* right to refuse consent to a search, not a third party's right. 174 Wn. App. at 267. Here, it was not Neighbarger refusing to consent to a search. Instead, the prosecution elicited testimony from Sarah that she refused to consent to a warrantless search of her son's cell phone. Sarah testified that she "didn't know what they were looking for, and [she] wanted them to have a reason." 4 VRP at 203. While Sarah did not recall explicitly telling the police officers she was concerned that they would find incriminating evidence, she stated that her words may have implied that. But Sarah never said that she believed Neighbarger was guilty.

Neighbarger faults appellate counsel for not being aware of *Gauthier*, arguing that this constitutes deficient performance. Neighbarger's appellate counsel admitted in his declaration that he was not aware of *Gauthier*. Suzanne Elliott, Neighbarger's expert, claims that appellate counsel should have known the relevant law and the fact that he did not constitutes deficient performance. We disagree. As stated above, this case is distinguishable from *Gauthier*, and thus, appellate counsel was not deficient for failing to cite *Gauthier* or raise this as an issue on direct appeal.[4]

Neighbarger also argues, in his reply brief, that the evidence relating to Sarah's refusal to provide consent is irrelevant, and that appellate counsel was deficient for failing to make a

---

[4] If *Gauthier* applied, there would be a standing issue. *Gauthier* was based on a constitutional right to refuse consent to a search. 174 Wn. App. at 259. Neighbarger does not have standing to assert a violation of Sarah's constitutional rights. *State v. Williams*, 142 Wn.2d 17, 21-23, 11 P.3d 714 (2000); *State v. Shuffelen*, 150 Wn. App. 244, 254-257, 208 P.3d 1167 (2009); *State v. Gutierrez*, 50 Wn. App. 583, 591-592, 749 P.2d 213 (1988).

relevance argument. Because Neighbarger did not raise this issue in his PRP and made this argument for the first time in his reply brief, we do not address it.

We hold that appellate counsel was not deficient for failing to challenge on direct appeal the admission of Sarah's refusal to consent to the search of ZN's cell phone.

## C.  SARAH'S OPINION TESTIMONY

Neighbarger argues that Sarah's testimony that she refused consent to search ZN's cell phone and her statement to police that she did not want them to find incriminating evidence against her husband created an inference that she believed that Neighbarger was guilty and, therefore, was improper opinion testimony.  We disagree.

Opinion testimony about the defendant's guilt violates the defendant's constitutional right to a jury trial, which includes a right to an independent determination of the facts by the jury.  *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).  "Opinions on guilt are improper whether made directly or by inference."  *State v. Quaale*, 182 Wn.2d 191, 199, 340 P.3d 213 (2014).

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).  "Discretion is abused if it is exercised on untenable grounds or for untenable reasons."  *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).  The appellant bears the burden of proving an abuse of discretion occurred.  *State v. Ashley*, 186 Wn.2d 32, 39, 375 P.3d 673 (2016).

In claiming that Sarah's testimony was an opinion that he was guilty, Neighbarger relies on *State v. Johnson*, 152 Wn. App. 924, 219 P.3d 958 (2009), *State v. Lilo*, No. 76421-7-I (Wash. Ct. App. Jul. 9, 2018) (unpublished), http://www.courts.wa.gov/opinions/pdf/764217opinion.PDF, and *State v. Lahti*, 23 Wn. App. 648, 597 P.2d 937 (1979).

In *Johnson*, the defendant was convicted of child molestation. 152 Wn. App. at 926. The State introduced evidence that when the victim disclosed intimate details regarding the defendant, his wife became hysterical, stated that the victim's allegations were true, and told the victim that she believed her allegations. *Johnson*, 152 Wn. App. at 932-33. We held that this evidence was highly prejudicial and was inadmissible under ER 403. *Johnson*, 152 Wn. App. at 933-34.

In *Lilo*, the defendant was convicted of child sex abuse involving his niece. Slip op. at 1-2. The State elicited testimony that when the victim reported the abuse, the defendant's wife stated, "I knew it." *Lilo*, slip op. at 5. We stated that "[i]t is 'highly prejudicial' to let a jury hear that a wife believed an accusation that her husband sexually abused a child," and concluded that the trial court erred in admitting the evidence. *Lilo*, slip op. at 7.

In *Lahti*, the defendant was convicted of indecent liberties regarding his daughter. 23 Wn. App. at 649. The State introduced evidence that the defendant's wife had expressed suspicions about her husband's conduct. *Lahti*, 23 Wn. App. at 649. Although the issue was impeachment on a collateral matter, we noted that the wife's alleged suspicions constituted an opinion regarding her husband's guilt and could not be admitted as direct evidence. *Lahti*, 23 Wn. App. at 649-50.

Here, Sarah's testimony did not rise to the level of the wives' statements in *Johnson*, *Lilo*, and *Lahti*. Especially in *Johnson* and *Lilo*, the wives made direct, unequivocal statements that they believed that their husbands were guilty. Sarah's refusal to give consent to search the phone and related statements were indirect and ambiguous. We conclude that these statements were not an improper statement that Neighbarger was guilty and that we would not have reversed on this issue if it had been raised on direct appeal.

We hold that appellate counsel was not deficient for failing to challenge on direct appeal the admission of Sarah's statements relating to her refusal to consent to the search of ZN's cell phone.

D. CAPTAIN PIHL'S TESTIMONY THAT SARAH WAS NOT COMFORTING ZN

Neighbarger argues that his appellate counsel was ineffective for not challenging the admission of Captain Pihl's testimony that Sarah had not attempted to comfort her son when she learned of her son's allegations of rape against Neighbarger. He claims that this was improper opinion testimony. We disagree.

The State elicited the following testimony from Pihl:

[STATE:] During the contact that you had with both [ZN] and his mother, do you recall making any observations about their interactions together?

[CAPTAIN PIHL:] Yes.

[STATE:] What were those observations?

[DEFENSE COUNSEL]: I'd just object as to relevance, Your Honor.

THE COURT: Overruled.

[CAPTAIN PIHL:] There was not a comfort. There was not a -- it didn't appear that there was any -- it was very somber, and so she sat there and listened, but there was no comforting or did not appear to be reaching out to [ZN] in a way that might --

5 VRP at 346-47.

Pihl's testimony was not an opinion on Neighbarger's guilt. Rather, she was testifying as to her own observations of Sarah's reaction. She did not express an opinion that she did not find Sarah credible, that Sarah reacted as if Neighbarger was guilty, or that she believed Neighbarger was guilty. She merely provided factual information about her observations that was relevant to

show Sarah's bias in favor of Neighbarger. If appellate counsel had raised this issue on appeal, we would not have found that the trial court abused its discretion by admitting this evidence.

We hold that appellate counsel was not deficient for failing to challenge on direct appeal the admission of Captain Pihl's statements.

E. DETECTIVE WILCOX'S TESTIMONY ZN WAS RELIEVED NEIGHBARGER WAS ARRESTED

Neighbarger next argues that he received ineffective assistance of appellate counsel when appellate counsel failed to argue on direct appeal that Detective Wilcox's opinion that ZN seemed relieved to hear that his father had been arrested constituted improper opinion testimony. We disagree.

Wilcox testified that ZN seemed relieved to hear that Neighbarger had been arrested. This was a brief statement that Wilcox did not elaborate on. Similar to the statement analyzed above, this was not an opinion. Instead, it was merely Wilcox recalling her own observations. Because the testimony was simply an observation, we would not have held that the trial court abused its discretion by admitting this testimony. Therefore, Neighbarger cannot show deficient performance.

We hold that appellate counsel was not deficient for failing to challenge on direct appeal the admission of Detective Wilcox's statement.

III. CLOSING ARGUMENT

Neighbarger argues that the prosecutor committed misconduct by misrepresenting Arnold's testimony as having given her opinion about ZN's and JN's credibility. Alternatively, Neighbarger argues that he received ineffective assistance of counsel at trial because defense counsel failed to object to the prosecutor's argument regarding Arnold's opinion testimony, and that he received ineffective assistance of counsel on direct appeal because his appellate counsel

did not raise this as an issue. We hold that the prosecutor did not commit misconduct during closing argument, and Neighbarger did not receive ineffective assistance of counsel.

A. PROSECUTORIAL MISCONDUCT

A personal restraint petitioner who raises prosecutorial misconduct has the burden to prove the misconduct was either a constitutional error resulting in actual and substantial prejudice or a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 539, 397 P.3d 90 (2017).

When, as here, the petitioner did not object during trial, his prosecutorial misconduct claim is considered waived unless the misconduct is "'so flagrant and ill-intentioned that it cause[d] an enduring and resulting prejudice that could not have been neutralized by a curative instruction.'" *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 143, 385 P.3d 135 (2016) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997)). We evaluate whether misconduct is flagrant and ill-intentioned by focusing "less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured." *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). Prosecutorial misconduct that denies a defendant a fair trial is flagrant and ill-intentioned. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018).

> Put simply, to prevail in his PRP, [a petitioner] must overcome three hurdles. First, he must show the prosecutor committed misconduct. Second, because he did not object during trial, [he] must show that misconduct was flagrant and ill-intentioned and caused him prejudice incurable by a jury instruction. Third, because he raises this issue in a PRP, [a petitioner] must show the prosecutor's flagrant and ill-intentioned misconduct caused him actual and substantial prejudice.

*Phelps*, 190 Wn.2d at 166.

Here, during closing argument, the prosecutor referred to Arnold's testimony and stated that she was an expert witness. The prosecutor also referred to the late disclosure that children victims often make when they are abused. Neighbarger argues now that this was prosecutorial misconduct because the prosecutor misrepresented Arnold's testimony. This argument is unpersuasive.

The trial court ruled that Arnold could *not* give her opinion as to the credibility of the two victims. She adhered to this rule throughout her testimony. Arnold testified that young children frequently delay their disclosure of sexual abuse, and she gave her opinions as to why that may occur.

During closing, the prosecutor stated that the jury was the sole judge of credibility, but that they may look to Arnold's testimony when determining credibility. Neighbarger argues that the prosecutor misrepresented jury instruction number four regarding expert opinion testimony when speaking about Arnold. However, the prosecutor did not misrepresent this jury instruction. She told the jury that it may take Arnold's testimony into consideration when evaluating the victims' credibility. This was not contrary to the jury instruction, and there was nothing improper about this argument. The prosecutor did not commit misconduct. Neighbarger cannot show that, if there was misconduct, the misconduct was so flagrant and ill-intentioned that it could not be cured by a jury instruction. *See Phelps*, 190 Wn.2d at 166. Therefore, we reject Neighbarger's prosecutorial misconduct argument.

B. INEFFECTIVE ASSISTANCE OF COUNSEL

Ineffective assistance of counsel is a constitutional error arising from the Sixth Amendment to the United States Constitution and article 1, section 22 of the Washington Constitution. *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017); *see also Strickland v. Washington*, 466 U.S.

668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on an ineffective assistance claim based on trial counsel's representation, the petitioner must show that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant. *Estes*, 188 Wn.2d at 457-58; *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840, 280 P.3d 1102 (2012).

Because we hold that the prosecutor's argument was not improper, we conclude that defense counsel was not deficient in failing to object to the argument.

## IV. CUMULATIVE ERROR

Neighbarger argues that cumulative error precluded him from receiving a fair trial. The State argues that Neighbarger received a fair trial, and there is no cumulative error. Because the trial court did not err, we hold that the cumulative error doctrine does not apply.

Cumulative error applies when numerous errors deny the defendant his or her right to a fair trial, "even if each error standing alone would be harmless." *State v. Venegas*, 155 Wn. App. 507, 520, 228 P.3d 813 (2010). Absent error, the cumulative error doctrine does not apply. *State v. Clark*, 187 Wn.2d 641, 655, 389 P.3d 462 (2017).

Neighbarger has failed to establish any trial or direct appeal error. Therefore, because there is no error, the cumulative error doctrine does not apply.

## V. NEWLY DISCOVERED EVIDENCE

Neighbarger argues that "[p]ost-trial discovery of evidence of [JN's and ZN's] plot to make sure their stories matched so that their father would be convicted" warrants a new trial. We hold that this does not constitute newly discovered evidence.

RAP 16.4(a) states that a petitioner can obtain relief only if his or her restraint is unlawful for one of the reasons stated in RAP 16.4(c). Under RAP 16.4(c)(3), a restraint is unlawful for the following reason:

> Material facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, sentence, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government.

This provision applies to newly discovered evidence. *In re Pers. Restraint of Lui*, 188 Wn.2d at 569. To be entitled to relief based on "newly discovered evidence," a petitioner must establish that the evidence "'(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; *and* (5) is not merely cumulative or impeaching." *In re Pers. Restraint of Lui*, 188 Wn.2d at 569 (quoting *In re. Pers. Restraint of Lord*, 123 Wn.2d 296, 319, 868 P.2d 835 (1994)); RAP 16.4(c)(3).

> This "new evidence" comes from a declaration by Cho, ZN's ex-wife:

> 5. I first learned that there was a criminal case with charges against Richard Neighbarger in September 2015 when [JN] told me that he was going to court against his father. He told me generally that his father had molested him. Out of respect for his privacy, I did not press for details beyond what he told me.

> . . . .

> 18. I left Washington State for basic training in August of 2016.

> . . . .

> 20. I finished my out of state training and returned to Washington State, and to the University Place apartment in May of 2017.

> 21. The criminal trial of Richard Neighbarger took place while I was out of State on Active Duty for training.

> . . . .

> 24. Between the time [ZN] came to live with us and the time I left for military training, he and [JN] talked about the criminal case against their father on several occasions. [JN] would often express anxiety or worry that maybe they would lose the case. [ZN] would reassure him that they would win. [ZN] would tell [JN], "You know there's no way he will win at trial, we have the advantage over him."

[ZN] would say that the jury would never believe their father because their statements to the police about what their father did to them matched.

. . . .

27. I was never contacted by Sarah Neighbarger before the trial.

. . . .

29. I told Sarah about the comments that [ZN] and [JN] had made about having the advantage over their father because their stories matched. As near as I can tell, I told Sarah about their comments in October of 2018.

. . . .

31. Sarah Neighbarger asked if it was okay for her to share my contact information with Mr. Fricke and I said yes. Mr. Fricke contacted me sometime after that, and we arranged to meet.

32. I was making some trips to downtown Tacoma in connection with my own divorce, and on March 20, 2018, I stopped by Mr. Fricke's law office.

33. I told Mr. Fricke about the comments [ZN] and [JN] made about their advantage and their chances of winning the trial. I also told him that [ZN] had accused his mother Sarah of hitting him but declined to talk to me about it in any detail and showed no physical signs of injury.

PRP, Decl. of Cho at 1-6.

Cho's declaration does not meet the test for newly discovered evidence. This information is hearsay and likely would not have been admissible at trial. Under ER 801(c), "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible under ER 802 unless an exception to the rule of inadmissibility. *State v. Alvarez-Abrego*, 154 Wn. App. 351, 366, 225 P.3d 396 (2010); *See* ER 803.

Here, Cho's statements about comments made by ZN and JN are hearsay. Accordingly, Cho could not have testified to this information.

Even if the evidence were admissible, the outcome of the trial likely would not have changed. There was still substantial evidence that suggested Neighbarger was guilty consisting of ZN's and JN's testimony regarding the abuse they endured from Neighbarger. Further, Cho's statements do not necessarily establish a conspiracy to ensure Neighbarger was found guilty, as Neighbarger now argues.

Cho's statements were discovered since trial. But Neighbarger does not demonstrate that this evidence could not have been discovered before trial by the exercise of due diligence. Although Cho was out of the state during the trial, she was in Washington until August of 2016. Neighbarger provides no evidence to establish whether he attempted to reach her or learn of this information prior to her leaving Washington.

Again, this was likely hearsay and would not have been admissible. If admissible, the evidence would have only been used to impeach JN's and ZN's credibility as to whether they were telling the truth. It is impeaching evidence because it would have been used to discredit their testimony.

We hold that this does not constitute newly discovered evidence that warrants a new trial.

CONCLUSION

We deny Neighbarger's PRP.

A majority of the panel has determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Sutton, J.

We concur:

Lee, C.J.

Maxa, J.