IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

March 22, 2022

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br> v.<br><br>MICHAEL GREGORY RAMSEY,<br><br>    Appellant. | No. 54638-8-II<br><br><br>UNPUBLISHED OPINION |

  WORSWICK, J. — Michael Ramsey appeals his conviction and sentence for second degree rape. He argues that (1) a juror displayed actual bias but was seated in violation of his right to a fair and impartial jury, (2) a photograph of his victim that could have been used to impeach her testimony was improperly excluded under the rape shield statute, and (3) the State violated his constitutional rights by presenting evidence that he did not consent to a search of his property. For each of these arguments, Ramsey alternatively argues that he received ineffective assistance of counsel. Ramsey further argues that (4) cumulative error violated his right to a fair trial, and (5) the trial court erroneously imposed community custody conditions and discretionary legal financial obligations (LFOs). In a statement of additional grounds (SAG), Ramsey also argues that an expert witness improperly testified to an ultimate issue and that the prosecutor elicited testimony in violation of a pretrial ruling and elicited false testimony.

  We hold that (1) Ramsey cannot show that the juror in question was actually biased, (2) the trial court properly denied Ramsey's motion to admit the photograph under the rape shield statute, and (3) Ramsey cannot show manifest error because the State did not use Ramsey's lack of consent to a search as substantive evidence of guilt. Thus, Ramsey cannot

show ineffective assistance of counsel or cumulative error. We accept the State's concession that the trial court erroneously imposed community custody conditions and discretionary LFOs. The arguments in Ramsey's SAG also fail. Accordingly, we affirm Ramsey's judgment and sentence and remand to strike the incorrect community custody conditions and LFOs.

## FACTS

### I. BACKGROUND

Ramsey and the victim, SB, worked together at a store in Tumwater, and would take breaks together. They discussed Ramsey's relationship with his ex-wife and daughter, and SB's relationship with her ex-boyfriend and his family. Although they communicated via Facebook and Snapchat social media applications, Ramsey and SB did not communicate or associate regularly outside of work.

In July 2019, SB sent a Snapchat message to multiple people, asking if anyone wanted to get dinner together. Ramsey responded, and the two agreed to meet at a restaurant in Olympia at around 3:00 PM. During the meal, Ramsey asked SB if she had plans for the rest of the day and invited her to visit his farm in Centralia. SB agreed to visit Ramsey's farm, but told him she had to be home by 7:00 PM for a study session. There was no study session; SB wanted to set a time because she did not want to be with Ramsey for too long.

They left from the restaurant and Ramsey drove SB in his car to his farm. Once at the farm, Ramsey led SB around the property. When they reached an orchard, Ramsey placed a coat on the ground and asked SB to sit on it with him, and she did. Ramsey tried to kiss SB, but she leaned away and said she wanted to go home. SB repeatedly told Ramsey, "No, stop, I want to go home," but Ramsey pinned her down. 1 Verbatim Report of Proceedings (VRP) at 170.

SB tried to push Ramsey away but he forcefully raped her. He eventually stopped and they walked to Ramsey's house.

Later, Ramsey agreed that SB could leave. SB insisted on driving Ramsey's car back because she did not trust Ramsey to take her back to Olympia. They returned to the restaurant, and SB got in her car and drove to her friend's house. SB's friend took her to the hospital where they conducted a sexual assault exam. The following day, SB called the police.

Lewis County Sheriff Deputy Emmett Woods was assigned to investigate the case. After interviewing SB, he went to Ramsey's farm. There, Deputy Woods interviewed Ramsey and asked to be taken around the farm. Ramsey did not allow Deputy Woods to photograph the property. Deputy Woods arrested Ramsey and returned later to the farm with a warrant and photographed the property.

## II. TRIAL

The State charged Ramsey with second degree rape. The case proceeded to a jury trial in December 2019. At trial, witnesses testified to the facts stated above. Ramsey asserted a consent defense.

A. *Jury Voir Dire*

During voir dire, the trial court asked the jury venire if anyone was associated with or had a close friend or relative in the court system or legal system. Juror No. 10 answered yes and the court asked the juror to elaborate.

PROSPECTIVE JUROR NO. 10: Just a good friend of mine is a sheriff in Thurston County.

THE COURT: Okay. Anything about that that would affect your ability to be fair and impartial in this case?

PROSPECTIVE JUROR NO. 10: Yes and no.

3

THE COURT: Tell us more about that.

PROSPECTIVE JUROR NO. 10: Just conversations we've had, you know, I guess. Yeah, I don't know. I don't think I really want to elaborate any more.

THE COURT: Well, you might get some opportunities to further elaborate upon questioning from the attorneys, but for now we'll leave it at that.

1 VRP at 30-31.

The State then proceeded to ask prospective jurors questions about bias. The State discussed the burden of proof required to convict. The State questioned Juror No. 10:

[THE STATE]: Now, what we're talking about with bias is, No. 10, when you came into this courtroom, what was one of the first things you thought?

PROSPECTIVE JUROR NO. 10: Nervous.

[THE STATE]: When Mr. Ramsey was being introduced, what went through your head?

PROSPECTIVE JUROR NO. 10: (No response.)

[THE STATE]: Did you possibly wonder why you were here?

PROSPECTIVE JUROR NO. 10: Yeah. I was – you know, I would rather not say.

1 VRP at 57.

The State then moved on and asked jurors questions about the level of control and the role of the perpetrator and victim in assault and rape cases. 1 VRP at 59-61. The State turned back to Juror No. 10 and asked:

[THE STATE]: Okay. So if you only heard testimony from the victim about the rape, what would your thought process be?

PROSPECTIVE JUROR NO. 10: (No response.)

[THE STATE]: Can you convict based solely on the word of the victim?

PROSPECTIVE JUROR NO. 10: You cannot.

[THE STATE]: Cannot?

4

PROSPECTIVE JUROR NO. 10: I don't think so.

[THE STATE]: Why not?

PROSPECTIVE JUROR NO. 10: Wouldn't you need to have both, both sides?

[THE STATE]: Both sides. What do you mean by both sides?

PROSPECTIVE JUROR NO. 10: Well, each person has got their story.

[THE STATE]: Remember our discussion about burden of proof and who has to prove to you that the crime took place?

PROSPECTIVE JUROR NO. 10: You do.

[THE STATE]: I do. What does the defendant have to do?

PROSPECTIVE JUROR NO. 10: (No response.)

[THE STATE]: Under our current system of law, he doesn't have to do a thing. Do you agree with that or disagree with that?

PROSPECTIVE JUROR NO. 10: I agree with that.

[THE STATE]: Okay. Again I ask you, if you only heard testimony of the victim – and keep in mind that you don't disagree with the responses from the previous jurors – can you convict based solely on the word of the victim if that establishes that a rape took place?

PROSPECTIVE JUROR NO. 10: Only if you convince me.

[THE STATE]: And would that be enough evidence to convince you if the person comes in here and said, 'I was raped. That person raped me,' and then they go into detail?

PROSPECTIVE JUROR NO. 10: If you present enough evidence.

[THE STATE]: What type of evidence would you want?

PROSPECTIVE JUROR NO. 10: Physical.

. . .

[THE STATE]: Would you be more comfortable if there was physical evidence?

PROSPECTIVE JUROR NO. 10: Yes.

5

[THE STATE]: Is it required?

PROSPECTIVE JUROR NO. 10: No.

[THE STATE]: But you would obviously be more comfortable if there was physical evidence?

PROSPECTIVE JUROR NO. 10: I've watched a lot of movies. Let's go there, you know.

1 VRP at 62-64.

Later, the State summarized: "No. 10, so 9 and 7 have said they could convict on the testimony of just the victim if that establishes rape, but it would be a lot – it would make them feel more comfortable convicting if there were other evidence in addition to the victim's testimony." 1 VRP at 65-66. Ramsey did not challenge Juror No. 10 for cause, nor did Ramsey exercise all of his peremptory challenges. The court seated Juror No. 10 on the jury.

B.      *State's Motion in Limine and Defense's Motion to Admit Photograph*

The State made a motion in limine to prohibit Ramsey from eliciting any evidence regarding SB's past sexual behavior under the rape shield statute, RCW 9A.44.020. 1 VRP at 10-12. Defense counsel stated:

> I don't intend at all to get into the alleged victim's sexual past or history. . . . Depending on what [SB] says, I may intend to introduce a photograph that I believe was sent to my client where she's depicted scantily, and that's based on my interview. I suspect she might testify consistent with my interview that she had no interest whatsoever in my client. 'He was old,' is her word, 'and I wanted nothing to do with him.'
>
> She was communicating with him in a way that would seem to be inconsistent with that, but I don't know what she's going to say on the stand, and before I offer or even mark those, I would ask that the court make a ruling on that.

1 VRP at 11-12.

The State responded, in pertinent part,

6

I don't think the victim would say she wanted nothing to do with the defendant. I think she would say that they were casual friends, they worked together, they spent less than a handful of times together outside of work, but she wasn't romantically interested in him. I expect that to be her testimony, and I believe that's what she said in her interview.

Now, what was provided to me by defense is a screenshot of a Snapchat. Now, the Snapchat was posted by a friend of hers, not her. May or may not have been sent to the defendant. Sounds like the defendant would testify that it was sent to him.

What it is is two women and the back of a third woman basically wearing bras and underwear. It's my understanding they were at a club, and this was taken weeks to months prior to the rape. And so the State doesn't see that there's any – even if she sent it to the defendant weeks or months before the rape, the State doesn't see that there's any relevance as to whether or not she consented to having sex with him on the night in question if she sent him a less-than-modest photo weeks to months prior to the rape.

. . . But [Defense counsel's] email to me was that if she continues to insist she was not into my client, quote, then he intends to introduce this photo of them, which was posted on social media, to be fair, so dozens if not more people saw it. . . .

1 VRP at 13-14.

The trial court reserved judgment on the issue until later in the trial, but ruled that the photograph not be referred to during opening statements. Later, Ramsey brought up the admission of the photograph out of the jury's presence.

Ramsey argued that the photograph was admissible to impeach SB's credibility regarding the extent of her relationship with Ramsey. Ramsey's counsel offered that Ramsey would testify that he received the photograph directly from SB and that admitting it would impeach SB's credibility as to her statements that he and SB were merely friends.

The State responded that the photograph in question was taken by a friend, not SB, in May 2019, at a rave event. The friend posted it to Snapchat and SB re-posted it and shared the photograph with friends. The State offered that SB did not recall whether she had sent it to Ramsey directly and stated SB had sent it to more than one person. The State argued that SB

acknowledged she had been friendly colleagues with Ramsey and shared meals and conversation with him, and that therefore the photograph "only serves to paint her as a promiscuous person, which is actually what the rape shield law prohibits. . . . And she would state that her purpose was showing off that they were at this event." 2 VRP at 253.

Ramsey argued that "it all goes to her credibility," and stated that "it shows the nature of the relationship as opposed to how [SB has] characterized it on direct examination. She's not going to send that photograph to somebody she's not close to who she is not having some sort of relationship with." 2 VRP at 254-55.

The State responded that such a line of questioning would then open the door to whether SB sent the photograph to other people and that such questioning would expose SB's character to questions of promiscuity barred by the rape shield statute. The trial court denied Ramsey's request to admit the photograph.

The trial court explained:

I'm going to deny the admissibility, or I'm going to rule that it's not admissible under the rape shield law. I do find that it falls under rape shield.

No. 1, there are some procedural requirements under rape shield, and there needs to be a written motion, and it's mandatory – the rule says 'shall' – a written motion with an offer of proof and an affidavit supporting the offer of proof. None of that has been done.

I'm not a big fan of denying motions or denying rights on purely procedural grounds, and so I will also tell the parties that even had it been properly procedurally put before the court, I don't find under RCW 9A.44.020(3)(d) that it is relevant to the issue of consent, that it's not inadmissible because its probative value is substantially outweighed by the probability that its admission creates substantial danger of undue prejudice and that its exclusion would result in denial of substantial justice to the defendant.

And all three of those have to be met. It's not an 'or.' It's all three of them. And even if one, even if the first of those three was met, and that's the closest of those three, the other two are not. So I'm finding both on procedural and substantive grounds that it is not admissible.

8

2 VRP at 256-57.

C.    *Deputy Woods's Testimony*

Later in the trial, again while the jury was not present, the State sought clarity from the court on its proposed line of questioning for Deputy Woods. The State explained that it intended to ask Deputy Woods if he asked Ramsey for permission to take photographs of the farm. The State clarified that it did not intend to ask Deputy Woods if Ramsey made Woods get a warrant to take the photographs.

Ramsey asked that the court exclude mention of the warrant because he has a right to demand a warrant. The court responded:

> Right. [Ramsey] has a right to not incriminate himself, and that invocation of that right cannot be presented to the jury.
>
> It sounds like both parties know what the line is. I agree with [the State] that that's not crossing the line. That's going up to I think what is permissible, and it sounds like you agree to that as well.

3 VRP at 430. Ramsey agreed, and the court brought the jury in.

The State then called Deputy Woods. Deputy Woods testified that he went to Ramsey's farm to investigate and informed Ramsey why he was there. Deputy Woods asked Ramsey to give him a tour of the farm so he could see the scene and ask Ramsey questions. Deputy Woods testified that Ramsey agreed to walk him around the property. The following exchange then took place between the State and Deputy Woods:

> Q: What happened then?
>
> A: We left the house. We started walking. Next to the driveway there's kind of a pathway that led away from the house, and we started walking towards an open field, and I asked if he would be okay with me taking photos, and he asked me why. I told him that I wanted to compare photos with [SB's] statement to ensure that her statement was accurate. He then asked if he could talk to his brother first and talk to him about me taking photos.

Q: He asked if he could talk to his brother?

A: Or he said he wanted to talk to his brother first.

Q: And did he do that?

A: Yes.

Q: Okay. Did you at any point tell Mr. Ramsey that [SB] had been to the hospital and had a physical exam?

A: I did.

Q: What happened after Mr. Ramsey spoke with his brother?

A: Decided that he no longer wanted to walk me around the property.

Q: Then what did you do?

A: After that, I took Mr. Ramsey into custody.

3 VRP at 440-41.

Deputy Woods also testified that after he took Ramsey into custody, he and other sheriff deputies went to the farm to preserve the crime scene. The State asked Deputy Woods if he had a warrant to take photographs at the farm, and Deputy Woods stated that he did. Ramsey did not object.

The trial court admitted Deputy Woods's photographs of the farm. Deputy Woods's testimony then turned to his investigation on the farm, the photographs he took, his conversations with SB, and his examination of Ramsey.

Deputy Woods also testified that Ramsey told Deputy Woods that he and SB "made out." 3 VRP at 439. At one point, the State asked Woods whether Ramsey said "there was no sex," to which Deputy Woods responded "correct." 3 VRP at 451. On cross examination, Ramsey elicited testimony from Deputy Woods that Ramsey's full statement was that he made out

"[w]ith [SB], and that was it." 3 VRP at 487. Deputy Woods testified that Ramsey said he "didn't want to get into details because it was personal." 3 VRP at 487. Deputy Woods then admitted that Ramsey never explicitly denied having sex with SB.

Ramsey testified in his defense. He testified that the encounter with SB was consensual.

During closing arguments, the State referred to Deputy Woods's testimony and said,

> Deputy Woods took photos of the scene. He went around and he found where it was that she said this had occurred and took photos. You can see in the photos where the grass and twigs are all matted down in an area. [SB] said that's where it occurred, and that's where Deputy Woods took pictures of. That matched [SB's] story.

3 VRP at 595. The State did not otherwise refer to Deputy Woods's warrant or Ramsey's request to speak to his brother about Woods's request to photograph the farm.

D.   *Nurse Jensen's Testimony*

Nurse Lulu Jensen, a sexual assault nurse examiner, testified that she examined SB. Jensen testified that the exam included an interview of SB. Jensen testified that during the interview SB told Jensen that a coworker had vaginally penetrated her. 3 VRP at 384. SB reported to Jensen that she struggled and repeated to him that she did not want to continue, and that she wanted to go home.

Next, Jensen testified that she then conducted the physical exam. She said that SB "was just covered in just superficial scratches, which would be consistent with struggling in the brush." 3 VRP at 388. Ramsey objected to this statement and the trial court sustained the objection. Jensen continued her testimony and stated, "Superficial scratches all over her entire back. And she had bruising on her legs. She had superficial scratches everywhere, but I remember the back specifically. They were, I mean, just about all over her." 3 VRP at 388. Jensen also testified as to other injuries SB sustained. Jensen explained that SB's injuries were

"consistent with" what SB had told her during the interview portion of Jensen's examination. 3 VRP at 393, 395.

The jury found Ramsey guilty of second degree rape. The trial court sentenced him to 102 months. The court also restricted Ramsey's contact with minors and imposed a community custody supervision fee LFO.[1] Ramsey appeals.

## ANALYSIS

Ramsey makes multiple arguments on appeal. He argues that because Juror No. 10 displayed actual bias, the trial court erred in failing to excuse the juror. Next, he argues that the trial court violated his right to confrontation when it denied admission of the photograph of the victim for impeachment purposes. Ramsey next argues that the State impermissibly commented on Ramsey's exercise of his right to privacy because Deputy Woods alluded that Ramsey had refused him permission to photograph the farm without a warrant. Ramsey also argues that cumulative error violated his right to due process and a fair trial. Finally, Ramsey argues that the trial court erred when it imposed LFOs and community custody conditions involving minors.

The State concedes that the trial court improperly imposed the community custody conditions involving minors and LFOs. We accept the State's concession, however, Ramsey's remaining arguments fail.

### I. JUROR BIAS

First, Ramsey argues that Juror No. 10 displayed actual bias and that the trial court violated his right to a fair trial and impartial jury when it seated the juror. The State argues that Ramsey waived any challenge to the trial court's alleged failure to excuse Juror No. 10 for cause

---

[1] The trial court imposed the community supervision fee despite finding that Ramsey was indigent and stating it would impose only mandatory LFOs.

when he failed to exercise all of his peremptory challenges. We hold that because Ramsey fails to show actual bias his argument fails.

A.    *Standard of Review*

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution both guarantee a criminal defendant the right to trial by an impartial jury. *State v. Guevara Diaz*, 11 Wn. App. 2d 843, 854-55, 456 P.3d 869 *review denied*, 195 Wn.2d 1025, 466 P.3d 772 (2020). A party may challenge a juror for cause if the party can show actual bias. *Guevara Diaz*, 11 Wn. App. 2d at 855; RCW 4.44.170. Actual bias is "the existence of a state of mind on the part of the juror in reference to the action, or to either party, which satisfies the court that the challenged person cannot try the issue impartially and without prejudice to the substantial rights of the party challenging." RCW 4.44.170(2). A juror's opinion alone is not sufficient to sustain an actual bias challenge. RCW 4.44.190. Rather, "the court must be satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." RCW 4.44.190. Likewise, the court "must be satisfied that the potential juror is unable to 'try the issue impartially and without prejudice to the substantial rights of the party challenging' before dismissing the juror for actual bias." *State v. Sassen Van Elsloo*, 191 Wn.2d 798, 809, 425 P.3d 807 (2018) (quoting RCW 4.44.170(2)).

We review a trial court's decision not to dismiss a juror for a manifest abuse of discretion. *Guevara Diaz*, 11 Wn. App. 2d at 856. A trial court abuses its discretion if its decision is based on untenable grounds for untenable reasons. *Guevara Diaz*, 11 Wn. App. 2d at 856.

A trial court must excuse a prospective juror if the juror cannot disregard a preconceived opinion and try the issues impartially. RCW 4.44.190; *State v. Peña Salvador*, 17 Wn. App. 2d

769, 785, 487 P.3d 923 (2021). But a trial court need not excuse a prospective juror with a preconceived opinion if the juror can set aside the opinion to try the case on the evidence and the law as required by the trial court. RCW 4.44.190; *Peña Salvador*, 17 Wn. App. 2d at 785. "Equivocal answers alone are not sufficient to establish actual bias warranting dismissal of a potential juror." *Sassen Van Elsloo*, 191 Wn.2d at 808-09.

B.      *Peremptory Challenge Waiver*

As an initial matter, the State argues that Ramsey waived the challenge to Juror No. 10 because he accepted the empaneled jury without challenge. Ramsey argues that he is allowed to raise the issue of actual bias on appeal. We agree with Ramsey.

1.      *Ramsey Did Not Waive His Ability To Argue Actual Bias on Appeal*

We may decline to review the merits of a challenge to the jury composition. *State v. Clark*, 143 Wn.2d 731, 763-64, 24 P.3d 1006 (2001). Where a party does not challenge any of the ultimately seated jurors for cause or use an available peremptory challenge against any of them, we do not review the merits of an improper juror seating claim. *Clark*, 143 Wn.2d at 763-64. However, a defendant who challenges a conviction based on a claim of juror bias established by the record raises an issue of manifest constitutional error that is not waived even where that defendant fails to exercise all his peremptory challenges. *Guevara Diaz*, 11 Wn. App. 2d at 854.

Here, Ramsey did not challenge Juror No. 10 for cause and did not exhaust his peremptory challenges. However, Ramsey argues that Jury No. 10 exhibited actual bias. Thus, we review the merits of his claim.

2.      *Ramsey Cannot Show Actual Bias*

Ramsey argues that the trial court should have used its discretion to dismiss Juror No. 10 even in the absence of a challenge because Juror No. 10 displayed actual bias. We hold that Juror No. 10 did not display actual bias.

The trial court has a mandatory duty to dismiss an unfit juror even in the absence of a challenge. *State v. Lawler*, 194 Wn. App. 275, 284, 374 P.3d 278 (2016) (published in part); RCW 2.36.110; CrR 6.4(c)(1). Under RCW 2.36.110, "It shall be the duty of a judge" to dismiss a juror who is unfit because of actual bias. Actual bias exists when the trial court is "satisfied, from all the circumstances, that the juror cannot disregard such opinion and try the issue impartially." RCW 4.44.190.

However, "a trial court should exercise caution before injecting itself into the jury selection process." *Lawler*, 194 Wn. App. at 284. Trial counsel may have legitimate, tactical reasons not to challenge a juror who may have exhibited some bias. *Lawler*, 194 Wn. App. at 285. A juror's equivocal answers by themselves do not require that the juror be dismissed for cause. *Sassen Van Elsloo*, 191 Wn.2d at 808-09.

A trial court is in the best position to evaluate whether a juror should be dismissed because it can assess the juror's "tone of voice, facial expressions, body language, or other forms of nonverbal communication when making his statements." *Lawler*, 194 Wn. App. at 287. We therefore review the trial court's decision to not excuse a juror for a manifest abuse of discretion. *Guevara Diaz*, 11 Wn. App. 2d at 856. A trial court abuses its discretion when it bases its decisions on untenable grounds for untenable reasons. *Guevara Diaz*, 11 Wn. App. 2d at 856.

Here, Juror No. 10's answers were equivocal. When asked if his relationship with a police officer might create a bias, Juror No. 10 answered, "Yes and no." 1 VRP at 30-31.

15

Ramsey argues that Juror No. 10's "yes and no" response was unequivocal, Br. of Appellant at 24, but he is mistaken. Replying "yes and no" is the very embodiment of an equivocal statement. This response, along with Juror No. 10's other responses, "seemed to convey a vague, nonspecific discomfort with the case rather than a firm bias." *Lawler*, 194 Wn. App. at 287. Furthermore, the nonverbal aspects of the juror's response would be important. For example, the record shows that Juror No. 10 did not record an audible response to several of the questions posed to him. Whether the juror nodded his head, shrugged, or engaged in other nonverbal communication, we cannot tell.

Importantly, the record on appeal shows that Ramsey's counsel was alert to the possibility of bias and exercised several challenges to multiple jurors. Accordingly, it is also possible to infer from Ramsey's counsel's lack of challenge to Juror No. 10 that counsel saw no actual bias from Juror No. 10. Thus, there is nothing in the record beyond equivocal statements that shows any evidence of actual bias.

For all of these reasons, we hold that Juror No. 10 did not display actual bias and accordingly, that the trial court did not abuse its discretion.

3. *Ramsey Cannot Show Ineffective Assistance of Counsel Because There Was No Actual Bias*

In the alternative, Ramsey argues that his trial counsel rendered ineffective assistance by not inquiring further of Juror No. 10 and seek removal of the juror. We disagree.

To demonstrate ineffective assistance of counsel, Ramsey must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *State v. Vazquez*, 198 Wn.2d 239, 494 P.3d 424, 431 (2021). The failure to demonstrate either prong ends our inquiry. *State v. Classen*, 4 Wn. App. 2d 520, 535, 422 P.3d 489 (2018). Trial counsel may have legitimate, tactical or strategic reasons not to challenge a

16

juror and we do not interfere with defense counsel's strategic decisions in jury selection. *Lawler*, 194 Wn. App. at 285, 289. If Ramsey cannot show the absence of a legitimate trial strategy or tactic, then counsel's performance is not deficient. *Vazquez*, 198 Wn.2d at 248, 494 P.3d at 431.

Here, Ramsey cannot show that his trial counsel rendered ineffective assistance for two reasons. First, as explained above, here it is possible that Ramsey's trial counsel's decision not to challenge Juror No. 10 was a legitimate tactic. There is nothing in the record that suggests Ramsey's trial counsel did not evaluate the jurors. Moreover, the record shows that there were elements of Juror No. 10's voir dire answers that indicate he displayed bias in favor of Ramsey. More than once, Juror No. 10 stated that he would be more comfortable with physical evidence in addition to a victim's testimony. From this, it is possible to infer that defense counsel believed Juror No. 10 could be fair. We do not interfere with defense counsel's strategic decisions in jury selection. *Lawler*, 194 Wn. App. at 288. On the record before us, it is likely that Ramsey's counsel had legitimate, tactical or strategic reasons not to challenge Juror No. 10.

Second, as explained above, Ramsey cannot show actual bias by Juror No. 10. Accordingly, he cannot show any prejudice resulted from seating Juror No. 10. Thus, Ramsey's ineffective assistance of counsel claim fails.

## II. ADMISSION OF THE PHOTOGRAPH UNDER THE RAPE SHIELD STATUTE

Next, Ramsey argues that the trial court violated his right to confrontation and right to present a defense by excluding the photograph of the scantily-clad victim. The State argues that the trial court properly applied the rape shield statute, RCW 9A.44.020. We agree with the State.

A.      *Legal Principles*

1.      *Standard of Review*

Although an accused has the right to examine witnesses and be heard in his own defense, those rights are not absolute. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).  A defendant has no right to present irrelevant evidence, and the State's interest in excluding prejudicial evidence is balanced against the defendant's need for the information sought.  *State v. Orn*, 197 Wn.2d 343, 352, 482 P.3d 913 (2021); *Jones*, 168 Wn.2d at 720.  Evidence of a victim's past promiscuity can be excluded, but evidence of high probative value of consent cannot be restricted if it would deprive the defendant of the ability to testify to his version of the incident.  *Jones*, 168 Wn.2d at 721; *State v. Hudlow*, 99 Wn.2d 1, 9, 14-16, 659 P.2d 514 (1983).  Trial courts therefore retain wide latitude to impose reasonable limits on cross examination based on, inter alia, harassment or prejudice.  *State v. Lee*, 188 Wn.2d 473, 487, 396 P.3d 316 (2017).

We review the question of whether Ramsey's constitutional rights were violated de novo, but we review the trial court's evidentiary rulings for an abuse of discretion.  *State v. Arndt*, 194 Wn.2d 784, 797, 453 P.3d 696 (2019).  Accordingly, we apply a two-step standard of review.  *State v. Arndt*, 194 Wn.2d at 797-98.  First, we review "the trial court's individual evidentiary rulings for abuse of discretion."  *State v. Case*, 13 Wn. App. 2d 657, 667, 466 P.3d 799 (2020).  Second, we consider "de novo the constitutional question of whether those rulings deprived the defendant of their right to present a defense and cross-examine adverse witnesses."  *Case*, 13 Wn. App. 2d at 667.

2.      *Rape Shield Statute*

A trial court's decision to exclude evidence under the rape shield statute is reviewed for an abuse of discretion.  *State v. Cox*, 17 Wn. App. 2d 178, 186, 484 P.3d 529 (2021).  A trial

court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds for untenable reasons. *Lee*, 188 Wn.2d at 486. Also, a trial court abuses its discretion when it applies the wrong legal standard or improperly applies the law. *Orn*, 197 Wn.2d at 351.

The rape shield statute provides, in pertinent part:

In any prosecution for the crime of rape . . . or for an attempt to commit, or an assault with an intent to commit any such crime evidence of the victim's past sexual behavior including but not limited to the victim's marital behavior, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is not admissible if offered to attack the credibility of the victim and is admissible on the issue of consent, except where prohibited in the underlying criminal offense, only pursuant to the following procedure:

(a) A written pretrial motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the past sexual behavior of the victim proposed to be presented and its relevancy on the issue of the consent of the victim.

(b) The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated.

(c) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and the hearing shall be closed except to the necessary witnesses, the defendant, counsel, and those who have a direct interest in the case or in the work of the court.

(d) At the conclusion of the hearing, if the court finds that the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's consent; is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice; and that its exclusion would result in denial of substantial justice to the defendant; the court shall make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

RCW 9A.44.020(3).

Where a statute is clear on its face, we give meaning to the plain language of the statute alone. *Jones*, 168 Wn.2d at 722.

B.    *Abuse of Discretion and Ramsey's Constitutional Rights To Confrontation and To Present a Defense*

Ramsey argues that the trial court's exclusion of the photograph of SB violated his confrontation rights and his right to present a defense. The State argues that the trial court properly excluded the photograph under the rape shield statute and did not violate Ramsey's rights. We agree with the State.

1.    *The Trial Court Properly Denied Ramsey's Motion To Admit the Photograph Under the Rape Shield Statute*

First, we examine the trial court's evidentiary rulings for an abuse of discretion. *Case*, 13 Wn. App. 2d at 667. Here, Ramsey argues that the trial court abused its discretion when it excluded the photograph because it applied the wrong legal standard. We disagree.

As stated above, under the rape shield law, a defendant must fulfill both procedural requirements and certain evidentiary requirements for the trial court to admit evidence of past sexual behavior on the topic of a victim's consent. RCW 9A.44.020(3). Evidence of past sexual behavior is inadmissible to attack the victim's credibility. RCW 9A.44.020(3). Ramsey's argument fails for three reasons. First, he did not follow the proper procedure when he sought admission of the photograph. Second, Ramsey offered the photograph to impeach the victim, that is, to attack the victim's credibility. This is plainly barred under the statute. Third, the photograph did not meet the evidentiary requirements of RCW 9A.44.020(3)(d).

a. *Improper Procedure*

First, under the rape shield statute, a defendant proffering evidence must make a written offer of proof containing the evidence's relevancy on the issue of the consent of the victim. RCW 9A.44.020(3)(a). The statute states, "The written motion shall be accompanied by an affidavit or affidavits in which the offer of proof shall be stated." RCW 9A.44.020(3)(b).

Ramsey did not follow the mandated procedure. He did not make a written motion and filed no affidavit with the offer of proof. The trial court therefore did not abuse its discretion when it excluded the photograph.

*b. Credibility and Impeachment*

Second, RCW 9A.44.020(3) bars admission of evidence of past sexual behavior to attack credibility and requires that, when the defendant seeks admission of evidence "on the issue of consent," the offer of proof must explain the evidence's relevancy on the issue of the consent of the victim. RCW 9A.44.020(3)(a).

At trial, Ramsey sought admission of the photograph because he wanted to question whether SB had sent it solely to Ramsey, to impeach SB's testimony that SB and Ramsey had only a platonic relationship. Ramsey's counsel stated multiple times that he was offering the photograph because "it goes to her credibility, which is essentially the central issue in this case." 2 VRP at 252.[2]

Ramsey argues that the rape shield statute does not apply here and that the trial court erred when it did not apply a three-part test our Supreme Court laid out in *State v. Jones*, 168 Wn.2d at 720. But *Jones* is inapt. There, the defense proffered evidence from the victim that was contemporaneous to the incident, that is, during the same sexual incident as the alleged criminal act. *Jones*, 168 Wn.2d at 717. The court held that the rape shield statute did not apply because it precluded evidence of a "victim's past sexual behavior," whereas the evidence in *Jones* was contemporaneous. 168 Wn.2d 717, 722 (quoting RCW 9A.44.020(2)). Here,

---

[2] On appeal, Ramsey again argues multiple times that he did not proffer the photograph to show consent, but to attack SB's credibility. Faced with the rape shield statute's prohibition on evidence offered to attack credibility, Ramsey argues that because he proffered it for credibility purposes and *not* consent purposes, "the procedural requirements [of RCW 9A.44.020(3)] were not triggered." Br. of Appellant at 50. Ramsey's argument is self-defeating.

conversely, the proffered photograph was taken two months before the crime. One of SB's friends took the photograph and the photograph itself is not probative of any sexual relationship between SB and Ramsey. A photograph taken of an unrelated event two months before the crime in question is in no way "contemporaneous" to the act. Accordingly, the rape shield statute applies and *Jones* does not.

Ramsey then cites *State v. Horton*, 116 Wn. App. 909, 920, 68 P.3d 1145 (2003), to argue that the trial court should have admitted the photograph to allow Ramsey to show that SB testified inaccurately at trial. But the *Horton* case was decided under RCW 9A.44.020(4), which provides an exception that evidence is admissible on the issue of credibility "when the prosecution presents evidence in its case in chief tending to prove the nature of the victim's past sexual behavior." The State presented no such evidence here, and *Horton* does not apply.[3] Accordingly, the trial court properly excluded the photograph based on Ramsey's offer of proof.

c. *Relevance, Probative Value and Substantial Justice*

Although it was not an abuse of discretion for the trial court to deny admission of the photograph on procedural grounds alone, the trial court made a clear record that even if Ramsey had followed the proper procedure, the court would not have admitted the photograph under RCW 9A.44.020(3)(d). Under subsection (d), there are three evidentiary requirements that must be fulfilled before admission:

To admit, the court must find that (1) "the evidence proposed to be offered by the defendant regarding the past sexual behavior of the victim is relevant to the issue of the victim's

---

[3] Ramsey also argues that "the State opened the door to defense cross-examination on it" because SB testified that she had never been intimate with Ramsey before. Br. of Appellant at 47-48. But a victim's denial of having a prior intimate relationship with a defendant is not "evidence of the nature of the victim's past sexual behavior," thus it does not fall under RCW 9A.44.020(4). Ramsey's argument fails.

consent;" (2) it "is not inadmissible because its probative value is substantially outweighed by the probability that its admission will create a substantial danger of undue prejudice;" and (3) "that its exclusion would result in denial of substantial justice to the defendant." RCW 9A.44.020(3)(d).

Here, the trial court ruled:

I don't find under RCW 9A.44.020(3)(d) that it is relevant to the issue of consent, that it's not inadmissible because its probative value is substantially outweighed by the probability that its admission creates substantial danger of undue prejudice and that its exclusion would result in denial of substantial justice to the defendant.

And all three of those have to be met. It's not an 'or.' It's all three of them. And even if one, even if the first of those three was met, and that's the closest of those three, the other two are not. So I'm finding both on procedural and substantive grounds that it is not admissible.

2 VRP at 257.

Thus, the trial court applied the correct legal standard: the rape shield statute. Nothing in the record on appeal shows that the trial court's decision on the relevance and probative nature of the photograph was based on untenable grounds or for untenable reasons.

Even if the photograph was minimally relevant to the victim's consent, the trial court properly exercised its discretion when it ruled the photograph would be more prejudicial than probative. Ramsey's position comes down to an argument that the clothing SB wore in the photograph tends to show that SB was, or wanted to be, intimate with him. But the photograph was taken at a public event, so its relevance regarding intimacy was minimal. However the nature of the clothing SB was wearing could have lead the jury to speculate on SB's promiscuity, nonchastity, or sexual mores. Thus, any probative value was outweighed by prejudice. Accordingly, we hold that the trial court applied the correct legal standard and properly excluded the photograph under the rape shield statute, RCW 9A.44.020.

2. *The Trial Court Did Not Violate Ramsey's Confrontation Rights or Right to Present a Defense*

Ramsey argues that the procedural requirements of the rape shield statute "do not override" his constitutional rights to confrontation and to present a defense. Br. of Appellant at 49. Ramsey appears to argue that the rape shield statute should give way to considerations of his constitutional rights, because he has a "weighty interest . . . to present evidence in his defense." Br. of Appellant at 50. We disagree.

a. *Right of Confrontation*

The right of confrontation is not absolute. *State v. Lile*, 188 Wn.2d 766, 781-82, 398 P.3d 1052 (2017). "The scope of such cross examination is within the discretion of the trial court." *State v. Russell*, 125 Wn.2d 24, 92, 882 P.2d 747 (1994). Moreover, "the rape shield statute does not violate a defendant's constitutional right to confrontation precisely because the statute does not preclude evidence of high probative value." *State v. Sheets*, 128 Wn. App. 149, 157, 115 P.3d 1004 (2005), *as amended* (Aug. 2, 2005).

As our Supreme Court explained in *State v. Hudlow*, 99 Wn.2d at 16, we balance "the defendant's right to produce relevant evidence versus the State's interest in limiting the prejudicial effects of that evidence." And the *Hudlow* court noted that the rape shield statute allows introduction of evidence with high probative value. *Hudlow*, 99 Wn.2d at 16.[4] The statutory test in RCW 9A.44.020(3)(d) is identical to the constitutional balancing test in *Hudlow*.

Here, as explained above, the photograph of the victim did not have high probative value. Moreover, balancing the potential prejudice against Ramsey's right to impeach SB with this weak evidence, we hold that Ramsey's confrontation rights were not violated. *See Huldow*,

---

[4] *Hudlow* examined former RCW 9.79.150(3), which was recodified as RCW 9A.44.020(3). 99 Wn.2d at 5.

99 Wn.2d at 16. The trial court did not abuse its discretion in excluding evidence of the photograph, and Ramsey's confrontation rights were not violated.

b. *Right To Present a Defense*

Reviewing this argument under the two-step process announced in *Arndt*, we first recognize, as discussed above, that the trial court did not abuse its discretion in excluding the photograph. Next, we examine whether the ruling violated Ramsey's right to present a defense.

A trial court may exclude evidence so long as a defendant is not prevented from presenting his defense theory of the case to the jury. *See Arndt*, 194 Wn.2d at 813-84. Here, Ramsey testified that SB consented. He also presented Facebook and Snapchat messages between himself and SB to support his theory that SB consented. The photograph was not a vital piece of evidence needed to present this theory. Because Ramsey was able to advance his defense without admission of the photograph, his right to present a defense was not violated.

3.     *Ramsey's Trial Counsel Did Not Render Ineffective Assistance*

In the alternative, Ramsey argues that he received ineffective assistance of counsel when his trial counsel failed to make a written motion and file an affidavit as required by RCW 9A.44.020(3). We disagree.

As noted above, to demonstrate ineffective assistance of counsel, Ramsey must show that (1) defense counsel's performance was deficient, and (2) that the deficient performance resulted in prejudice to the defendant. *Vazquez*, 198 Wn.2d at 247-48, 494 P.3d at 431. He must show a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Gregory*, 192 Wn.2d 1, 22, 427 P.3d 621 (2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). The failure to demonstrate either prong ends our inquiry. *Classen*, 4 Wn. App. 2d at 535.

Here Ramsey's argument fails because he cannot show prejudice. Because the trial court made a record that it would have excluded the photograph even if Ramsey's counsel had followed the correct procedure, Ramsey cannot show that the result of the proceeding would have been different but for counsel's performance. Accordingly, Ramsey cannot show ineffective assistance of counsel.

### III. COMMENT ON RAMSEY'S RIGHT TO PRIVACY

Ramsey argues that the State impermissibly commented on his right to privacy when it elicited Deputy Woods's testimony that Ramsey told Deputy Woods that he would like to talk to his brother before Deputy Woods took any photographs of the farm. The State concedes that Deputy Woods's testimony was improper, but argues that it was a not a manifest constitutional error. We agree with the State.

### A. *Legal Principles*

Ramsey did not object to Deputy Woods's testimony below. Because he did not raise an objection in the trial court, Ramsey has waived the issue absent manifest constitutional error. RAP 2.5(a)(3). To raise an error for the first time on appeal, an appellant must demonstrate (1) the error is "truly of a constitutional magnitude" and (2) the error is manifest. *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). "[M]anifestness" requires a showing of actual prejudice. *Kalebaugh*, 183 Wn.2d at 584. "'To demonstrate actual prejudice, there must be a plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" *Kalebaugh*, 183 Wn.2d at 584 (alteration in original) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

Warrantless searches of constitutionally protected areas are unreasonable per se and accordingly subject to protections under the Fourth Amendment to the U.S. Constitution and

Article I, section 7 of the Washington Constitution. *State v. Ridgway*, 57 Wn. App. 915, 918, 790 P.2d 1263 (1990); *State v. Gauthier*, 174 Wn. App. 257, 263, 298 P.3d 126 (2013). Photographing property may constitute a search, and a warrant or court order is therefore first required. *See Gauthier*, 174 Wn. App. at 263. A person who invokes his or her right "to refuse consent to a warrantless search" may not have their refusal used as substantive evidence of guilt in a criminal trial. *Gauthier*, 174 Wn. App. at 264, 266.

B.      *Manifest Constitutional Error*

Ramsey fails to show that the admission of Deputy Woods's testimony was a manifest error because he cannot show it had practical and identifiable consequences in the trial. *Kalebaugh*, 183 Wn.2d at 584. At no point did the State use Deputy Woods's testimony that he obtained a search warrant as substantive evidence of guilt. Nor did the State attempt to link Deputy Woods's testimony that he obtained a search warrant with his testimony on the photographs he took of the crime scene and Ramsey's reluctance to allow him to take the photos. The comment on the warrant was fleeting and about the general criminal investigation that took place, not a manifest error. *See State v. Mohamed*, 187 Wn. App. 630, 651, 350 P.3d 671 (2015).

Ramsey relies on *State v. Gauthier* to argue that the State's use of a defendant's invocation of his constitutional right to refuse consent to a warrantless search was manifest constitutional error. 174 Wn. App. at 267. There, Gauthier was suspected of rape and declined to provide a DNA sample to compare with evidence found on the victim. 174 Wn. App. at 261. At trial, the State repeatedly questioned Gauthier during cross-examination about his refusal to provide a DNA sample, elicited the testimony "for the primary purpose of encouraging the jury to infer guilt based on Gauthier's refusal to provide a DNA sample," and argued in its closing

argument that Gauthier's refusal was consistent with the actions of a guilty person. 174 Wn. App. at 262, 270.

*Gauthier* is distinguishable on its facts. Here, the State elicited testimony from Deputy Woods that Ramsey said he wanted to talk to his brother before allowing Deputy Woods to take photographs, and that after talking to his brother, Ramsey no longer allowed Deputy Woods to walk around the farm. The State further elicited evidence that when Deputy Woods returned to the farm to take photographs, he had a warrant.

During closing arguments, the State referred to Deputy Woods's testimony and said,

> Deputy Woods took photos of the scene. He went around and he found where it was that she said this had occurred and took photos. You can see in the photos where the grass and twigs are all matted down in an area. [SB] said that's where it occurred, and that's where Deputy Woods took pictures of. That matched [SB's] story.

3 VRP at 595. The State did not otherwise refer to Deputy Woods's warrant or Ramsey's refusal to allow a warrantless search.

Here, in contrast to *Gauthier*, the State did not use Ramsey's invocation of his right to refuse a warrantless search as substantive evidence of guilt. The State did not pursue this line of questioning with Deputy Woods. Moreover, the State did not argue that Ramsey's actions were indicative of guilt. As noted above, Deputy Woods's testimony was merely a fleeting reference to Ramsey's exercise of a constitutional right.[5] Accordingly, we hold that it did not rise to the level of manifest constitutional error and Ramsey waived the issue.

---

[5] Likewise, the State's reference to Deputy Woods's photographs in closing argument was tenuously related to Woods's testimony about Ramsey's request to speak to his brother before Woods took photographs and is, at best, an indirect reference to Ramsey's exercise of his rights.

C.    *Ineffective Assistance of Counsel*

Once again, Ramsey argues in the alternative that his trial counsel's failure to object to Deputy Woods's testimony was ineffective assistance of counsel. But he cannot show prejudice. As explained above, Ramsey cannot show sufficient prejudice to show manifest constitutional error. *Kalebaugh*, 183 Wn.2d at 584. Accordingly, any error here was not manifest. Thus, Ramsey cannot show prejudice and his argument fails.

## IV.  CUMULATIVE ERROR

Ramsey next argues that cumulative error violated his right to a fair trial. We disagree.

A defendant may be entitled to a new trial when cumulative errors result in a trial that is fundamentally unfair. *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Ramsey argues that the cumulative effect of the seating of Juror No. 10, the exclusion of the photograph of SB, the State's elicitation of Deputy Woods's testimony regarding Ramsey's invocation of his constitutional rights, and his counsel's inability to present a competent defense entitle him to a new trial. However, as explained above, Ramsey was affected by only one error, and he failed to demonstrate that it was manifest. One error is not cumulative. *In re Cross*, 180 Wn.2d 664, 690-91, 327 P.3d 660 (2014), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018). Accordingly, we hold that he is not entitled to a new trial.

## V.  COMMUNITY CUSTODY AND LEGAL FINANCIAL OBLIGATIONS

Finally, Ramsey argues that the trial court erred when it imposed community custody conditions involving minors and LFOs. Turning to the community custody conditions, Ramsey was convicted of a crime against an adult, but his judgment and sentence restricted his contact with minors. The State concedes this was error and we accept the concession.

Also, the trial court found Ramsey indigent, and stated at the sentencing hearing that it would impose only mandatory LFOs. But the trial court imposed a community custody supervision fee, which is a discretionary LFO. *See State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018). The State also concedes this was error and we accept its concession.

## VI. STATEMENT OF ADDITIONAL GROUNDS

In his SAG, Ramsey argues that Jensen, the sexual assault nurse examiner, improperly testified on the ultimate issue, and that the prosecutor committed misconduct by eliciting this testimony. He further argues that the prosecutor committed misconduct by eliciting false testimony from Deputy Woods. These arguments fail.

### A. *Ultimate Issue*

First, Ramsey argues that Jensen's repeated testimony that SB's injuries were "consistent with" sexual assault and SB's statements to Jensen during the interview went to the ultimate issue of whether he raped SB. We disagree.

We review the trial court's decision to admit expert testimony for an abuse of discretion. *State v. Kirkman*, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). "Testimony in the form of an opinion or inferences otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704. An expert opinion is not barred where a medical professional testifies that an injury is consistent with sexual abuse. *State v. Young*, 62 Wn. App. 895, 905-07, 802 P.2d 829 *as modified on reconsideration*, 62 Wn. App. 895, 817 P.2d 412 (1991). In *Young*, Division I of this court held that testimony about medical conditions and their consistency with sexual abuse did not go to the ultimate issue of whether the defendant committed statutory rape and indecent liberties. 62 Wn. App. at 907. The *Young* court explained that there was no error where the witness neither testified that the medical observation proved

30

sexual abuse occurred, identified the abuser, nor that the findings could have only resulted from abuse. 62 Wn. App. at 906.

The same is true here. Jensen never testified as to the ultimate issue of whether Ramsey committed rape. Instead, Jensen testified only that SB's injuries were consistent with sexual abuse. Accordingly, Ramsey's argument fails.

B.      *Prosecutorial Misconduct*

Second, Ramsey argues that the prosecutor committed misconduct by eliciting Jensen's testimony that SB's injuries were "consistent with" sexual assault. SAG at 1-3. Likewise, Ramsey argues that the prosecutor committed misconduct by eliciting testimony from Deputy Woods in which he gave false testimony and misled the jury. We disagree.

To prevail, Ramsey bears the burden of establishing that the conduct was both improper and prejudicial. *State v. Song Wang*, 5 Wn. App. 2d 12, 30, 424 P.3d 1251 (2018). To establish prejudice, he must show "a substantial likelihood that the misconduct affected the jury verdict." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). "We evaluate the prosecutor's challenged statements 'within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions.'" *Song Wang*, 5 Wn. App. 2d at 30 (quoting *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003)).

Turning to Jensen's testimony, the prosecutor asked Jensen what took place during her examination of SB. Jensen responded that SB "was just covered in just superficial scratches, which would be consistent with struggling in the brush." 3 VRP at 388. Ramsey objected to this statement and the trial court sustained the objection. We presume the jury disregarded this

statement and Ramsey does not show how it was prejudicial in the context of the whole case. *Kalebaugh*, 183 Wn.2d at 586.

Jensen continued her testimony and stated, "Superficial scratches all over her entire back. And she had bruising on her legs. She had superficial scratches everywhere, but I remember the back specifically. They were, I mean, just about all over her." 3 VRP at 388.

As explained above, this testimony was not improper because it did not reach an ultimate issue. *Young*, 62 Wn. App. at 905-07. Although the prosecutor's original question drew an objection that the trial court sustained, this alone is not proof of misconduct, especially because we presume the jury disregarded her original statement. Ramsey cannot show prejudice because the prosecutor elicited no prejudicial testimony. Nothing that Jensen testified to was admitted in error.

Next, Ramsey argues that the prosecutor elicited false testimony from Deputy Woods when Woods implied that Ramsey's statement that he and SB "made out" and "that was it" was the same as Ramsey denying that he had sex with SB. 3 VRP at 487; SAG at 3-4. But this argument fails because Deputy Woods further testified that Ramsey never explicitly denied having sex with SB. 3 VRP at 454. Moreover, the jury had the benefit of Ramsey's full statement to Deputy Woods. Ramsey has not shown that the prosecutor elicited false testimony from Deputy Woods, or that Deputy's Wood's "that's it" testimony prejudiced him. Thus, Ramsey's argument fails.

CONCLUSION

We hold that Ramsey was not denied the right to a fair trial and an impartial jury because he could not show that the juror in question displayed actual bias. Next, we hold that the trial court properly excluded the photograph depicting the victim in scantily-clad attire under the rape

shield statute. Likewise, we hold that the trial court did not violate Ramsey's right to confrontation or to present a defense. We further hold that Ramsey waived his challenge that the State impermissibly commented on his right to privacy because he did not object and cannot show manifest constitutional error. Each of Ramsey's ineffective assistance of counsel arguments fail, as does his cumulative error argument. The arguments Ramsey raises in his SAG also fail. However, the trial court improperly imposed the challenged community custody conditions and LFOs. Accordingly, we affirm Ramsey's judgment and sentence and remand to strike the incorrect community custody conditions and improper legal financial obligations.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, J.

We concur:

_____
Glasgow, A.C.J.

_____
Veljacic, J.